## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

———————————————————— )
MICHAEL WILLIAMS,                                      )
HANNAH WILLIAMS,                                       )
MICHAEL WILLIAMS,                                      )
as Next Friend of NATHAN WILLIAMS      )
and LIBBY WILLIAMS,                                    )
              Plaintiffs,           )
                                 )
      v.                                                  )     **CIVIL ACTION NOS. 12-40117-TSH**
                                 )     **and 12-40118 TSH[1]**
OFFICER JOHN S. CZANOWSKI,            )
OFFICER JOSEPH W. WOLSKI,              )
OFFICER TROY L. VALARDI,                  )
SERGEANT GUY BIBEAU,                        )
OFFICER JAMES F. TRIFIRO,                  )
OFFICER JESSE GADAROWSKI,            )
OFFICER LARRY LANDRY,                      )
DETECTIVE WILLIAM CROCKETT,      )
DETECTIVE ROCCO SICILIANO,          )
DETECTIVE LT. JOHN BERNARD,          )
OFFICERS DOE 1 THROUGH 11 and       )
THE CITY OF GARDNER, MA.,                )
              Defendants.            )
————————————————————)


## MEMORANDUM OF DECISION AND ORDER
### September 8, 2015

**HILLMAN, D.J.**

### Background

    Michael Williams ("Williams"), Hannah Williams ("Hannah"), and Michael Williams

as next friend of Nathan Smith and Libby Smith ("Nathan" and "Libby") have filed a federal

———————————————

[1] This Memorandum of Decision and Order addresses motions relevant to the case of *Williams, et al. v. Czanowski, et al.,* Civ.Act No. 12-40118-TSH ("*Williams Case*"). The *Williams Case* has been consolidated with the related case of *Palmieri et al. v. Czanowski et al.,* 12-40017-TSH ("*Palmieri Case*").   Because the *Palmieri Case* is designated the lead case, the motions addressed herein have been docketed in that case. The *Palmieri Case* has settled and will now be closed.   Therefore, all future filings shall be made solely in the *Williams Case.*

civil rights claim against the City of Gardner ("City") and the following members of the Gardner Police Department: Officers John S. Czanowski ("Czanowski"), Joseph W. Wolski ("Wolski"), Troy L. Valardi ("Valardi"), James F. Trifiro ("Trifiro"), Jesse Gadarowski ("Gadarowski"), Larry Landry ("Landry"); and Guy Bibeau ("Sgt. Bibeau"); Detectives William Crockett ("Det. Crockett"), Rocco Sicilliano ("Det. Sicilliano"), and John Bernard ("Det. Lt. Bernard"). More specifically, Williams has asserted claims against the Defendants under 42 U.S.C. §1983 for unlawful seizure of property, false arrest and imprisonment, unreasonable search of his home, his right to due process and/or his right to be free from cruel and unusual punishment, in violation of Fourth, Fifth, Eighth and Fourteenth Amendments. Williams has also filed Massachusetts state law claims against the Defendants for intentional infliction of emotional distress, false arrest, false imprisonment and loss of consortium. Hannah, Nathan and Libby have alleged state law claims for intentional infliction of emotional distress, false imprisonment, and loss of consortium.[2] This Memorandum of Decision and Order addresses the following motions: *Defendants, Officer John S. Czanowski, Officer Troy L. Valardi,Officer James F. Trifiro, Officer Jesse Gadarowski, Officer Larry Landry, Detective William Crockett, Detective Rocco Siciliano, (Former) Detective/Deputy Chief John Bernard And The City Of Gardner's Partial Motion For Summary Judgment On The Plaintiff, Michael Williams' Complaint (Leave To File Granted OnJune 2, 2015)*(Docket No. 63), *Defendant Guy Bibeau's Motion For Summary Judgment* (Docket No. 67), and

---

[2] Plaintiffs have filed a stipulation dismissing the following claims and Defendants with prejudice: (1) all claims under the Massachusetts Civil Rights Act, Mass.Gen.L. ch. 12, §§11-H-I (Counts 7-14); (2) the malicious prosecution, abuse of process and defamation claims (Counts 17, 21 and 24); (3) all claims against the Doe Officers 1-11; and (4) all claims against Officers Troy L. Valardi and James F.Trifuro.

*Defendant Officer Joseph W. Wolski's Motion For Summary Judgment On The Williams Plaintiffs' Complaint* (Docket No. 71).   For the reasons set forth below, these motions are granted, in part, and denied, in part.

### Standard of Review

Summary Judgment is appropriate where, "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Carroll v. Xerox Corp.*, 294 F.3d 231, 236 (1st Cir. 2002) (citing Fed. R. Civ. P. 56(c)).   "'A "genuine" issue is one that could be resolved in favor of either party, and a "material fact" is one that has the potential of affecting the outcome of the case."   *Sensing v. Outback Steakhouse of Florida, LLC*, 575 F.3d 145, 152 (1st Cir. 2009) (quoting *Calero-Cerezo v. U.S. Dep't. of Justice*, 355 F.3d 6, 19 (1st Cir. 2004)).

When considering a motion for summary judgment, the Court construes the record in the light most favorable to the nonmoving party and makes all reasonable inferences in favor thereof.   *Sensing,* 575 F.3d at 153.   The moving party bears the burden to demonstrate the absence of a genuine issue of material fact within the record. *Id.,* at 152.   "'Once the moving party has pointed to the absence of adequate evidence supporting the nonmoving party's case, the nonmoving party must come forward with facts that show a genuine issue for trial.'"   *Id.* (citation to quoted case omitted).   "'[T]he nonmoving party "may not rest upon mere allegations or denials of the [movant's] pleading, but must set forth specific facts showing that there is a genuine issue of material fact as to each issue upon which [s/he] would bear the ultimate burden of proof at trial." *Id.* (citation to quoted case omitted).   The nonmoving party

cannot rely on "conclusory allegations" or "improbable inferences". *Id.*   (citation to quoted case omitted).   " 'The test is whether, as to each essential element, there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." ' " *Id.* (citation to quoted case omitted).

### **Facts**

#### *The Williams-Colangelo Relationship*

Between 2007 and 2009, Williams and Michelle Colangelo ("Colangelo") dated and lived together in the City with their respective children from prior marriages.   According to Williams, he and Colangelo fought constantly.   At some point, Williams asked Colangelo to move out. In November of 2009, Colangelo moved to an apartment a few blocks away from Williams's house. During the months after their break-up, Colangelo began receiving threatening text messages from an unknown or unverified sender. On or about December 16, December 24, December 28, and December 30 of 2009, the tires to Colangelo's vehicle were slashed.   Based on video surveillance of the December 24, 2009 incident, and Williams's purported prior threats that he would damage her car if she left him, Colangelo informed the Gardner Police that she believed Williams had vandalized her vehicle.   Colangelo reported each instance of tire slashing to the Gardner Police Department. She also reported the threatening text messages.

On at least two separate occasions, Colangelo applied for abuse prevention orders against Williams.   Williams testified that Colangelo applied for these orders based on her claim that he had threatened to murder her and her children.   While they were in a relationship, Williams represented to Colangelo that he could send unverifiable text messages

from his computer.   Consequently, Colangelo informed the Gardner Police Department that she believed Williams was the individual contacting her.   Williams denies sending the subject text messages to Colangelo.

### *Williams's January 2, 2010 Arrest*

At approximately 8:00 p.m. on January 2, 2010, Officers Trifiro and Czanowski, among others, responded to a report of vandalism at Colangelo's apartment. Two witnesses, Roger and Debra Jodoin (the "Jodoins"), reported to Officers Trifiro and Czanowski that they observed Williams slash the driver's-side tires of Colangelo's car with what appeared to be a knife; both of the Jodoins were familiar with Williams and they had observed him from only a few feet away.   Colangelo was watching the surviellance video at the time her tires were being slashed; she identified the perpertrator as Williams and ran outside to confront him. The Jodoins and Colangelo separately called the police as Williams ran away.

After speaking with the Jodoins, Officers Czanowski began tracking what he believed to be Williams's footprints in freshly fallen snow.   Officers Wolski and Czanowski tracked the footprints to the back of the residence of Jeffrey Palmeiri, Williams's brother. Officer Wolski testified that he observed that the door at the back of the house was partially opened and that there was movement inside.   Officer Wolski further testified that the door latch was not connected to the door jamb. Upon arriving at the Palmieri residence, Officer Czanowski performed a cursory check of the back door, opened the screen and knocked. He then checked the front of the house. He re-joined Officer Wolski in the back after Officer Wolski advised him to come back because he had observed damage to the door jamb.   Upon re-joining Officer Wolski, Officer Czanowski observed damage to the rear door jamb, which he testified

he "couldn't see from where [he] was right away."   Officer Czanowski reported his and Officer Wolski's observations regarding the basement door to Sgt. Bibeau, who was monitoring the situation on his radio.[3]  Officer Czanowski requested that Sgt. Bibeau come to the Palmieri residence; he did so and parked in the front.   Officer Czanowski again radioed to Sgt. Bibeau that he and Officer Wolski had tracked footprints leading up to the back of the house, that the door was damaged and that there were no footprints leaving the house.   Sgt. Bibeau told officer Czanawski that if it looked like someone had broken in to go inside and check it out. Officers Wolski and Czanowski then entered the basement and Williams was arrested inside the house. Sgt. Bibeau entered the house after Williams was arrested.   He did not participate in the arrest, he did not observe the officers enter the house, and he did not make a firsthand observation of the damage to the back door until after the arrest.

Brian Bush ("Bush"), a neighbor who lived behind the Palmieri residence testified that he observed either one or two unidentified police officers kick the basement door, but he didn't know whether the basement door had suffered any damage before the officers entered the house.   He also saw two police cars in front of the house and several officers circling the house.   Bush's girlfriend, Theresa Morrissey, saw a police officer kick the back door on two occasions—the second time they continued to kick until it broke open.   According to Williams, he entered Palmieri's house through the back door using a key; the back door was not damaged at the time.   After entering, he went upstairs and just sat around doing nothing for an hour or two—he did not watch TV or use his cell phone. While sitting there, he saw

---

[3] Sgt. Bibeau had responded to Williams's house in the event he returned home.

lights flashing into the house and heard banging sounds. Officer Czanowski testified that he did not see anyone kick in the back door.

Officer Trifiro applied for a criminal complaint charging Williams with multiple counts including breaking and entering at night and wanton destruction of property. Sgt. Bibeau told Williams that based on the incident as a whole, he would be requesting a high bail. The Commissioner set Williams's bail at $20,000.   Palmieri told the police that night that Williams was welcome in his home and had permission to be there at any time.[4]

On January 4, 2010, Williams was arraigned on charges of malicious destruction of property over $250 dollars (Colangelo's tires); criminal harassment (as to Colangelo); and wanton destruction of property under $250 dollars (the basement door at the Palmieri residence).   Judge Fox, the Gardner District Court Judge who presided at an April of 2010 hearing on Williams's motion to suppress found that, although the basement door was forcibly opened, the officers had observed prior damage to said door before entering Palmeiri's house.   Judge Fox further found that the officers had a good-faith belief that Williams had entered the Palmieri residence armed with a knife, or other sharp object in an attempt to evade capture by the police after intentionally slashing the tires to Colangelo's vehicle. After a jury trial, Williams was found guilty on one count of malicious destruction of property (tire slashing).   Williams was sentenced to twelve months administrative probation and $1,500 restitution to Colangelo; he had spent 60 days in jail prior to trial.

---

[4] Williams has a key to Palmieri's house and is allowed access to borrow things or take care of the cat. He was not borrowing anything or taking care of the cat on January 2, 2010. Furthermore, Palmieri testified that he was not home at the time, does not know how Williams got into the house, and does not know why he was there.

### *Williams's February 15, 2010 Traffic Stop*

On or about February 15, 2010, Williams was stopped while operating his vehicle in the City. Officer Gadarowski, who was in a marked cruiser, followed Williams's vehicle as soon as it left the house.   Williams was on the way to the movies with his children and a friend of his daughters. After following Williams for a few miles, Officer Gadarowski pulled him over. Williams was cited for failing to yield to a pedestrian after his vehicle went through a cross-walked intersection. During the stop, Williams told his children that the stop was "just a little thing they are starting to do to us." According to Williams, there were no pedestrian's in the area.   Although Hannah testified that she did not see any pedestrian, she admitted that she was looking at the window, not at the crosswalk, when they went through the intersection. Judge Fox found that there was nothing in the record to justify a conclusion that the February 15 incident is anything other than a routine traffic stop. Williams later contested the citation; Officer Gadarowski did not appear and the citation was dismissed.

### *The February 16, 2010 Incident*

On February 16, 2010, Officer Wolski investigated a suspected violation of the restraining order Colangelo had taken out against Williams. As part of his routine patrol, Officer Wolski had observed tire marks in the snow in front of Colangelo's apartment. Officer Wolski believed that the marks were suspicious.   He drove over to where Williams lived to determine whether the tire marks he had observed outside of Colangelo's residence matched the tire marks he had observed outside of the driveway of Williams's residence. Officer Wolski called Officer Landry to assist him in his investigation.   Officer Landry recalled driving down Williams's street during his routine patrols with the alley lights to his

cruiser on.   Officer Landry was aware of the ongoing allegations of vandalism between Colangelo and Williams and had the alley lights on his cruiser to light up the area so he could see if anyone was around or anything was going on. An alley light is a fixed white light on the side of the blue lights on the roof of a police cruiser. They cannot be adjusted up or down or left or right. They do not flash. They point outward at an angle from the side of the police cruiser.   Officer Landry testified that he drove down the street with the lights shining on both sides, but did not flash his lights at any particular address. Officer Landry did not file an incident report and there and there no request for charges was made in connection with his observations. Officer Wolski testified that they (he and Officer Landry) did not enter Williams's property—they remained

at the top of the driveway.

According to Williams, Officers Landry and Wolski drove their cruisers by his house flashing their spotlights on the house from 2:00 a.m. to 6:00 a.m. Williams made three calls to the Gardner Police Department that morning.   In the first two calls, he spoke to the dispatcher and receive no response. On the third call, he spoke with Sgt. Bibeau. He told Sgt. Bibeau that police officers were shining lights in his house and sitting at the end of his street. Sgt. Bibeau responded that the police were making sure that the area is safe.   Williams reported that the police were shining a light into his son's bedroom. Sgt. Bibeau responded that he tended not to believe Williams.   Williams said his kids were watching it and Sgt. Bibeau told him to have a good night, thanked him and disconnected the call.   Sgt. Bibeau later followed up about the incident with Officer Wolski and was satisfied with the response. Williams filed a motion to dismiss which included allegations of police misconduct.   In ruling on the motion,

Judge Fox found the actions of the police on this occasion (which included a traffic stop of Palmieri for a minor infraction as he was driving over to Williams's house in response to a phone call from Williams requesting assistance) to be excessive and unwarranted.[5]

### *March 4, 2010 seizure of laptop and iPhone*

On March 3, 2010, Officer Gadarowski applied for a criminal complaint and arrest warrant for Williams based on information received by Det. Crockett that Williams had sent threatening text messages to Colangelo. The messages had come through an AT&T IP address. Williams's employer, Boston Bread, had issued him a Dell Laptop as well as an iPhone for his use as their Regional Bakery Manager. Between December of 2008 and March of 2010, Williams testified that he used the company iPhone for his own personal use as well as business. On or about March 4, 2010, the Boston Bread laptop and iPhone were seized incident to Williams's arrest for purportedly violating an abuse prevention order and threats to commit murder by sending the threatening text messages.   Williams had left the iPhone in his car and one of the detectives later seized it from his vehicle before he was taken to the police station.   The laptop was seized from the sofa where it had been shoved under some cushions.

According to Det. Crockett, Williams's work computer and iPhone were taken from him in connection with his arrest.   Det. Siciliano indicated that the laptop was taken under exigent circumstances, including that the alleged offenses were serious and it was likely that evidence could have been destroyed if prompt action was not taken and it was uncertain as to how long it would take to draft an affidavit and have it reviewed by a clerk or judge.   During

---

[5] Judge Fox denied the motion to dismiss after finding that the officers' actions had not impeded Williams's right to a fair trial and that they did not rise to a level of misconduct so egregious that the severe sanction of dismissal was warranted.

a prior arrest, Williams had called his sister from the police station and asked her to remove his laptop computer and phone from the house, and therefore, if the computer were left in the house, evidence could have been lost, tampered with or removed.   Williams's phone was logged in with his personal possessions at the police station. The police took the position that it was seized under exigent circumstances because it had internet access through AT&T, three messages were sent to Colangelo's from an AT&T IP address, the alleged offenses were serious, it was likely that any evidence could have been destroyed if prompt action was not taken, and it was uncertain how long it would take to draft a search warrant affidavit and have it reviewed by a clerk or judge.   Also, given Williams's prior call to his sister, if left with Williams's possessions, it could have been turned over to a family member and evidence could have been lost, tampered with or removed.

Williams testified that when Dets. Crockett and Sicilian, and Det. Lt. Bernard came to arrest him, he was in his car and had just pulled into his driveway.   He stated that he left the iPhone in his car and asked if he could enter his house to change his pants.   The Detectives accompanied him inside the house and, according to Williams, seized the subject laptop which was shoved under the cushions on the sofa.   Williams testified that the iPhone was seized when Det. Lt. Bernard took his car keys and retrieved it from the car.[6]   At his deposition, Williams admitted that, when he was arrested for the January 2, 2010 incident, he called his sister and may have asked her to have the subject iPhone and computer removed

---

[6] According to Det. Crockett's report, Williams had the iPhone in his hand when he exited the vehicle—he told the detectives he wanted to give it to his daughter when he went into the house. Det. Crockett also indicates that the laptop was in plain view on the living room floor.   According to the police report, the laptop was seized at the time of arrest and, as previously stated, the iPhone was seized at the time of booking.

from his house. Williams's motion to suppress the seizure of the laptop and iPhone was allowed. Williams's bail in for the criminal charges against him arising out of the January 2, 2010 incident was revoked due to the Colangelo's claims that Williams was threatening her.

At the criminal trial, Judge Fox told the police officers, including Officer Czanowski, not to discuss their testimony with anyone else.   Immediately after Officer Czanowski testified, he left the courtroom and told other officers that "she has the tapes."[7]   Williams subsequently spent sixty-seven days in the Worcester County House of Correction. The charges of threatening to commit a crime and the abuse-prevention order violation charge were ultimately dropped.

In May 2010, Michelle Antonelli (Williams's sister) had a meeting with the City mayor (Mayor Hawke) in which she informed him about the January 2, 2010 charges against Williams (breaking and entering of Palmieri's residence and malicious destruction of the backdoor), the February 15, 2010 traffic stop by Officer Gadarowski and the early morning incident of February 16, 2010 when officers shown a bright light into Williams's home. Mayor Hawke took no action against any of the police officers after the meeting.

---

[7] In his material statement of facts, Williams states that Officer Czanowski left the courtroom and told other officers that the defense attorney had the "Turret Tapes.".   In support, he cites the *Affidavit of Michelle Antonelli*, *see Ex.M.* to *Pls' Mem. Of L. In Opp. To The Defs' Mot. For Sum. J.* (Docket No 82("*Pl's Mem."*). This factual allegation is misleading.   In her affidavit, Michelle Antonelli (Williams's sister) states that she heard Officer Czanowski tell his fellow officer/witnesses "she has the fucking tape." That Officer Czanowski was referring to the so-called "Turret tape" and the defense attorney is Ms. Antonelli's belief NOT a fact.

## Discussion

### *Motion For Summary Judgment of Officers's Czanowski, Gadarowski, Landry, Dets. Crockett and Sicilliano and Det. Lt. Bernard: The Section 1983 Claims*

Initially, I will address Williams's Section 1983 claims against the Defendants.    To establish a claim under Section 1983, Williams must establish that a person acting under the color of law denied him a right secured by the Constitution or by federal law. All of the individual Defendants in this case were acting under color of law and therefore, the issue with respect to Williams's Section 1983 claims against the individual Defendants will be whether such Defendants violated any of Willliams's constitutional rights.   As to the City, Willliams must establish that his Constitutional rights were violated and that the City is responsible for that violation as the result of a municipal police or unofficial custom or practice. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691, 98 S.Ct. 2018 (1978).

### *Officer Czanowski*

Williams has asserted a Section 1983 claim against Officer Czanowski alleging that Officer Czanowsi violated his Fourth Amendment rights by falsely arresting him for breaking and entering Palmieri's house and malicious destruction of property (the door jamb). Essentially, he asserts that there was no evidence that he broken into Palmerie's residence because he had permission to enter and possessed a key, and there was no evidence that he broke the door jamb or otherwise damaged any property to enter the residence.   He further alleges that it was Officer Czanowski and other officers that kicked in the door and conspired to falsely accuse him of the crime and that they pursued the charges against him knowing they were false.   He also asserts that Officer Czanowski violated his due process rights by

13

ignoring Judge Fox's order at a pre-trial hearing to refrain from disucssing his testimony with any of his fellow officers who had yet to testify.

I will address these claims in turn, starting with Williams's claim that Officer Czanowki violated his Fourth Amendment rights by falsely arresting him for breaking and entering and malicious destruction of property at the Palmieri residence. "Whether the arresting officers had probable cause is 'not necessarily based upon the offense actually invoked by the arresting officer but upon whether the facts known at the time of the arrest objectively provided probable cause to arrest.' The probable cause inquiry is an objective standard.   It is thus 'irrelevant' that the police officers subjectively believed, or told plaintiff at the time, that they were making the arrest for a particular offense.." *Goddard v. Kelley*, 629 F. Supp. 2d 115, 124-25 (D. Mass. 2009)(internal citations and citation to quoted case omitted).   At the same time, "it is objectively unreasonable for a police officer to create the 'probable cause' for an arrest by his own actions."   *Id.*, at 127.

Williams does not challenge his arrest for the malicious destruction of Colangelo's tires— indeed, he cannot given that he was convicted of this charge. *See Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364 (1994)(where a plaintiff asserts a violation of Section 1983 "based upon alleged unlawful actions that would 'necessarily imply' that a prior conviction was invalid, the plaintiff must prove that the conviction has been reversed, expunged, declared invalid by an appropriate state tribunal or called into question by issuance of a writ of habeas corpus by a federal court"). Furthermore, where a plaintiff has been arrested on multiple charges, *Heck* bars a plaintiff from claiming a Fourth Amendment violation arising out of his arrest. *See Jeannite v. City of Haverhill*, Civ. Act. No. 04-10541-RWZ, 2006 WL

1806410 (D.Mass. Jun. 30, 2006); *see also Wells v. Bonner,* 45 F.3d 90 (5th Cir. 1995) (if

probable cause for any of offenses charged—disorderly conduct, or resisting search—*Heck*

bars Section 1983 claim); *Sholley v. Town of Holliston,* 49 F.Supp.2d 14, 18 (D.Mass. 1999)

(plaintiff was arrested for abuse of prevention order; under *Heck,* plaintiff's conviction for

failure to submit barred Section 1983 claim for false arrest on abuse of prevention order

charge because arrest was single indivisible event).   Therefore, to the extent that Williams is

asserting a Section 1983 claim against Officer Czanowski for violation of his Fourth

Amendment right to be free from unreasonable seizure, his claim is barred.[8]

   Williams also asserts that the bringing of these alleged false charges against him

violated his rights because the imposition of such charges resulted in a higher bail being set

and his remaining incarcerated for sixty days prior to trial. These allegations are framed as a

substantive due process violation, however, he has not argued a substantive due process

claim. *Limone v. Condon*, 372 F.3d 39, 44-45 (1st Cir. 2004) )("if any concept is fundamental

to our American system of justice, it is that those charged with upholding the law are

prohibited from deliberately fabricating evidence and framing individuals for crimes they did

not commit. Actions taken in contravention of this prohibition necessarily violate due process

(indeed, we are unsure what due process entails if not protection against deliberate framing

---

[8]  I have previously found that *Heck* does not bar a plaintiff from asserting a claim under Section 1983 for violation of the Fourth Amendment where the plaintiff who was arrested for disorderly conduct and resisting arrest brought suit after being acquitted of the underlying charge (disorderly conduct), but was convicted of resisting arrest. *See Cocroft v. Smith*, Civ.Act.No. 10-40257-TSH, 2013 WL 1336304 (D.Mass. Mar. 29, 2013). I find this case distinguishable in that I find that the initial malicious destruction of property charge and the subsequent breaking and entering/malicious destruction of property charges to be a single incident whereas the latter charges arose out of Williams fleeing the scene of the initial incident.   Since the police had probable cause to arrest Williams for the initial charge of malicious destruction of property and he was convicted of that charge, *Heck* bars his Section 1983 action against Officer Czanowski for violation of his Fourth Amendment rights.

under color of official sanction")).[9]   Furthermore, there is nothing in the record which would support this highly speculative contention that his bail would have been lower if he was only charged with malicious destruction of Colangelo's tires. For these reasons Officer Czanowski is entitled to summary judgment on this claim.

Williams also alleges that Officer Czanowski, after testifying at a pre-trial hearing, discussed his testimony with other officers who had yet to testify in direct contravention of Judge Fox's order. Assuming, as I must, that this allegation is true, Williams's conclusory assertion that Officer Czanowki's conduct violated his due process rights, without more, fails to establish that Officer Czanowki's conduct rose to the level of a constitutional violation. For that reason, Officer Czanowski is entitled to summary judgment on this claim.[10]

### Officer Gadarowski

Williams has asserted a claim against Officer Gadarowski under Section 1983 for violation of his right to be free from unlawful seizure in connection with the February 15, 2010 traffic stop.   "[T]he temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure'

_____

[9]   Conclusory allegations that a police officer's conduct violated due process are insufficient, as a matter of law, to state a plausible claim. Because Williams has not preserved his due process claim, it is not necessary for me to address whether his claim, as framed is akin to a malicious prosecution claim which would be barred in any event. *See Sheppard v. Aloisi*, 384 F.Supp.2d 478 (D.Mass. 2005)(it is well established that malicious prosecution does not support claim of a substantive due process violation).

[10] The issue of Officer Czanowski's alleged violation of his order was brought to Judge Fox's attention during the hearing.   Judge Fox determined that since the Turret Tape was turned over by the Commonwealth to defense counsel during discovery, it was reasonable to conclude that the individual police officers were previously aware that the defense had the evidence. *See Pl's Mem.*, at *Ex.N*. Judge Fox went on to find that even if he were to assume that a violation occurred, Williams was not prejudiced because his lawyer could cross-examine the officer/witnesses about was on the tape and whether their testimony had changed. Judge Fox was in the best position to determine whether his order was violated and given his conclusion it is difficult to perceive how Williams could establish a due process violation.

of 'persons' within the meaning of the Fourth Amendment. As a result, an automobile stop is subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Standifird v. Town of Boxborough*, 84 F. Supp. 2d 213, 216 (D. Mass.) *aff'd as modified,* 230 F.3d 1347 (1st Cir. 2000)(citation to quoted case omitted).   "Under the Fourth Amendment, the initial traffic stop must have been supported by a reasonable suspicion that a traffic violation occurred. Reasonable suspicion is less than probable cause and more than a hunch." *Kenney v. Floyd*, 700 F.3d 604, 608 (1st Cir. 2012)(internal citations omitted). In this case, Officer Gadarowski has testified that he pulled Williams over for failing to yield to a pedestrian in a cross-walk—clearly a citeable offense.   Williams was issued a citation and then allowed to leave. Williams appealed the citation and it was dismissed when Officer Gadarowski failed to show up for the hearing.

A protracted discussion of this issue is not warranted: there is a genuine issue of material fact as to whether there was a pedestrian in or near the crosswalk at the time that Officer Gadarowski stopped Williams. Taking the facts in a light most favorable to Williams, who alleges that the stop was part of a harassment campaign against him, the jury could find that Officer Gadarowski lacked reasonable suspicion to conduct the traffic stop. Furthermore, the law was clearly established at the time that an officer cannot stop someone for an alleged traffic violation without reasonable suspicion and and therefore, Officer Gadarawski is not entitled to qualified immunity with respect to this claim.   For the foregoing reasons, Officer Gadarowski's motion for summary judgment is denied.[11]

---

[11] Although Williams objects to the traffic stop in the first instance, he does not allege, and there is no evidence in the record to support, an allegation that the stop was excessively prolonged by Officer Gadarowski. Therefore, if a jury finds for Williams on this claim, his recovery would be limited to damages suffered as a

*Officers Wolski and Landry*

Williams alleges that Officers Wolski and Landry violated his Fourth Amendment right to be free from unreasonable searches by shining a spotlight from their cruiser onto his home and into the bedrooms of his children over a four hour period and by standing at the end of his driveway and shining a flashlight on the tiretracks in the snow.   In his Complaint, Williams alleges that the officers' conduct constituted a violation of his Fourth Amendment (unreasonable search), Eighth Amendment (cruel and unusual punishment) and Fifth Amendment rights (due process).   However, he has not presented any legal argument with respect to the latter two claims, and therefore, the Court presumes he is not pursing them. In any event, such claims fail: (1) assuming that the facts as alleged by Williams support a finding that the shining of the spotlight on his property constituted harassment, such allegations fall *far* short of supporting a finding that these Defendants' conduct violated the Eight Amendment prohibition against cruel and unusual punishment, *Cf. Rutledge v. Arizona Bod. of Regents*, 660 F.2d 1345, 1353 (9th Cir. 1981)(allegations of verbal abuse embarrassment or harassment do not state cognizable claim under Section 1983; state tort remedies provide adequate remedy for such conduct); and (2) taking all of the factual allegations alleged by Williams as true, they do not rise to the level of a substantive due process violation, *see Correia v. Town of Framingham*, 969 F.Supp.2d 89, 96 (D.Mass. 2013)(although First Circuit has left open possibility that non-physical harassment and intimidation could shock the conscience and violate individual's substantive due process

---

result of the brief traffic stop to which he was subjected.

rights, it has refused to acknowledge any such violation even under egregious circumstances) and cases cited therein.

As to Williams's Fourth Amendment violation claim, it is undisputed that neither officer entered onto Williams's property and there is nothing in the record to support a finding that the officers ever utilized the spotlight to *look* into the residence. Simply put—there was no Fourth Amendment search as the result of the officers standing outside of the property and observing what is in plain view from a public area (regardless of whether they used a flashlight), nor would shining a light from the street onto the house constitute a search[12]. Therefore, Officers Landry and Wolski are entitled to summary judgment with respect to this claim.

### Dets. Crockett and Sicilliano and Det. Lt. Bernard

Williams asserts that Dets. Crockett and Sicilliano and Det. Lt. Bernard violated his constitutional rights by illegally seizing his iPhone and laptop.   Williams argues that the seizures were illegal because there were no exigent circumstances requiring seizure of these items, particularly in light of the fact that at booking, the laptop and iPhone were logged in as personal property of Williams and, therefore, were not within his control. Additionally, he argues that given that the items were no longer within his control, the Defendants cannot

---

[12] Williams's citation to *Kyllo v United States*, 533 U.S. 27, 121 S.Ct. 2038 (2001) is misplaced.   In *Kyllo,* the Supreme Court held that use of a thermal imaging device, "a device that is not in general public use, to explore details of the home that would previously been unknowable without physical intrusion, the surveillance is a search." *Id.*, at 40, 121 S.Ct. 2038. In this case, taking the facts in a light most favorable to Williams, the Defendants use of a flashlight is not a device which is "not in general public use." *Accord United States v. Oung*, 490 F.Supp.2d 21, n.7 (D.Mass. 2007); *United States v. Vela*, 486 F.Supp.2d 587 (W.D.Tex. 2005)(federal courts have routinely upheld use of flashlights by law enforcement officials). Furthermore, even if it is assumed that the police car's spotlights would constitute devices which are not in general public use (a dubious proposition), these Defendants did not use them to conduct a search of Williams's home.

justify the seizure as being incident to his arrest. Frankly, it is not clear to the Court whether

Williams is challenging both the seizure and *search* of these items or simply the seizure—the

headings of his argument suggest he is challenging both, but his legal arguments focus solely

on the seizure issue.   Furthermore, there is nothing in the record to support a finding that the

items were ever searched. Therefore, to the extent that Williams is asserting a claim for

unlawful search of his laptop and/or iPhone, summary judgment shall enter for these

Defendants.

The Court is also confused by Williams's unlawful seizure claim.   In his motion to

suppress before the state court, he focused on the initial seizure of these items when the police

arrested him at his home. *See Pl's Mem.*, at *Ex. P.*[13]  However, in his argument to this Court,

he focuses on the seizure of these items at the police station. In any event, there is a genuine

issue of material fact as to the circumstances surrounding the seizure of these items, and

therefore, for the following reasons, the motion for summary judgment is denied.

According to the Defendant officers, they entered Williams's home to allow him to

change and tell his daughters what was going on (there is no dispute that the entry was lawful)

and while in the house, they observed the laptop on the floor—in other words, it was in plain

view.   Additionally, when he exited his vehicle, Williams had his iPhone in hand—again, in

plain view.   The police were at Williams's to arrest him for threatening to commit a crime

(murder) against his former girlfriend, Colangelo and her son and violating an abuse

---

[13] The state court judge allowed the motion to suppress, by endorsement, after hearing. The Court was not provided a copy of the hearing transcript and therefore, cannot determine the basis of the ruling. Therefore, there is no basis for the Court to find that Williams is entitled to collateral estoppel as to the suppression of these items.

prevention order. Colangelo had been receiving threatening text messages from an unknown caller. Williams was previously suspected of slashing Colangelo's tires on multiple occasions and had been arrested for one of the incidents.   The police had been investigating the threats and had reason to believe that Williams was the sender. They knew from Colangelo that Williams had a cellphone and laptop that had been supplied by his employer.   The officers submitted an application for an arrest warrant which outlined in detail the evidence suggesting that Williams was the sender; an independent clerk reviewed the application, found probable cause and issued an arrest warrant.   Under these circumstances, the seizure of these items would be valid, or these officers would be entitled to qualified immunity because reasonable officers in their position would have thought that the laptop and iPhone could be seized (immediately, or, in the case of the iPhone, at booking) as contraband.   The incriminating nature of the items was readily apparent, and the officers had probable cause to believe that that these items were either evidence of a crime or contraband. *See United States v. Conlan*, 786 F.3d 380 (5th Cir. 2015)(seizure of cellphone and laptop proper under plain view doctrine where officers were lawfully in area where items could be plainly viewed, incriminating nature of items was immediately apparent, and officers had lawful access to items).

However, if the facts are as alleged by Williams, that is, if the iPhone and laptop were not in plain view when initially seized by the officers, then the seizure would be unlawful and the officers would not be entitled to qualified immunity.   I will note that even if the search is unlawful, Williams has something of an uphill battle in proving that he was injured.   It is undisputed that the iPhone and laptop were owned by Williams's employer.   On the summary judgment record, it is impossible for the Court to determine whether Williams had a

legitimate expectation of privacy in a computer and cellphone owned by his employer—the Defendants argue he did not and therefore, lacked standing to challenge the seizure; Williams has not addressed the issue.   Given that Williams was allowed to bring the laptop and cellphone home with him, it is likely that he had a reasonable expectation of privacy in their content and therefore, had standing to challenge their seizure.   Nevertheless, this is an issue which must be fleshed out based on company policies regarding the computer/cellphone, who retained access and the like.   Finally, Williams should bear in mind that assuming he has standing and prevails on this claim, the measure of his damages is highly uncertain for the simple reason that although he had possession of the items seized, they were not his property.

### Sgt. Bibeau's Motion For Summary Judgment

Williams has asserted claims against Sgt. Bibeau, directly and jointly with others, for false arrest, violating his right to due process and right to be free from an unreasonable search of his home and violation of his right to be free from cruel and unusual punishment. Sgt. Bibeau asserts that he is entitled to qualified immunity.   I have found that Williams cannot maintain a Section 1983 claim for any of the incidents as to which he alleges claims against Sgt. Bibeau directly or in his supervisory capacity. For the same reasons, Sgt. Bibeau is entitled to summary judgment with respect to Williams's Section 1983 claims against him.

### The City's Motion For Summary Judgment

In his Complaint, Williams asserts a *Monell* claim against the City based on generic and conclusory allegations that the City had a custom or policy of inadequately and improperly investigating complaints of police misconduct, inadequately supervising and training police officers and not requiring in-service training or retraining of officers that were

known to have engaged in misconduct, which fostered an environment in which officers

believed that their unlawful actions would be tolerated.   In his memorandum in opposition to

the City's motion, he clarifies that his claim is based Mayor Hawke's decision not to

investigate the allegations of police misconduct which Williams's sister, Michele Antonelli,

brought to his attention on April 6, 2010.   However, even assuming that the City failed to

investigate the alleged incidents after Ms. Antonelli brought them to Mayor Hawke's

attention, such failure *did not cause* the incident and therefore, there is no Section 1983

liability. *See Turkowitz v. Town of Provincetown,* 914 F.Supp.2d 62, 78 (D.Mass. 2012)(citing

*Kibbe v. Springfield,* 777 F.2d 801, 809 n. 7 (1st Cir. 1985)); *Cf. Rivers v. Bowers*, No. 2:06-

CV-712, 2008 WL 2079406 (to hold municipal liable for failure to investigate or discipline

officer for underlying incident, plaintiff must establish that municipality failure to investigate

amounts to ratification of officer's conduct; in order to satisfy deliberate indifference

standard, plaintiff must establish history of widespread abuse).   Therefore, summary

judgment shall enter for the City on Williams's Section 1983 claim.

### *The State Law Claims*[14]

### *Intentional Infliction of Emotional Distress*

The individual officers assert that Plaintiffs' claims against them for intentional

infliction of emotional distress fail because under the Massachusetts Tort Claims Act, they are

exempt from any claim arising out of an intentional tort, including emotional distress.   In the

---

[14] All of the remaining state law claims are intentional torts; as to some of these claims, Plaintiffs'
Complaint states they are asserted against all Defendants. However, (1) I do not read these counts as asserting
claims against the City; and (2) if Plaintiffs intended to assert such claims against the City, they are barred as the
City is not liable for the intentional torts of its employees.

alternative, they argue that Williams claim fails because he cannot establish the essential elements of his claim, in particular, that they acted intentionally. I disagree with the individual Defendants that they are exempt from suit for claims against them for intentional infliction of emotional distress.   As to whether the Plaintiffs have established each of the essential elements of such a claim is a closer call.   "To maintain a cause of action for intentional infliction of emotional distress, plaintiff must establish that: (1) the defendants intended to inflict emotional distress or that they knew or should have known that emotional distress was the likely result of their conduct; (2) the conduct of defendants was extreme and outrageous and beyond all possible bounds of decency and was utterly intolerable in a civilized community; (3) that the actions of the defendants were the cause of plaintiff's distress; and (4) the emotional distress sustained by plaintiff was severe and of such a nature that no reasonable person could be expected to endure it." *Spencer v. Roche*, 755 F. Supp. 2d 250, 268-69 (D. Mass. 2010) *aff'd*, 659 F.3d 142 (1st Cir. 2011).

Based on the facts as alleged by the Plaintiffs, I am going to allow the claims to survive, except as against Detectives Crockett and Sicilliano and Det. Lt. Bernard for the seizure of Williams's cellphone and laptop.[15]  More specifically, as to Detectives Crockett and Sicilliano and Det. Lt. Bernard, I find that Williams cannot make out a claim for intentional infliction of emotional distress because the facts stated in a light most favorable to him do not satisfy the first two elements of the offense.   I also want to caution the Plaintiffs that based

---

[15] To be clear, the claims going forward include: the claims against Officers Czanowski and Wolski regarding the alleged trumped up charges from the January 2, 2010 incident, against Officer Gadarowski in connection with the February 15, 2010 alleged unlawful traffic stop, and against Officers Landry and Wolski and Sgt. Bibeau in connection with the February 16, 2010 spotlight incident.

on the record before me, I have serious misgivings as to whether any of them can establish the last element of the offense, that is that they suffered the type of severe emotional distress that can sustain such a claim. *See Willoughby v. Town of Tisbury,* 750 F. Supp. 2d 374, 383 (D. Mass. 2010)(To show "severe" emotional distress, plaintiff must show that s/he suffered kind of distress that no reasonable man could be expected to endure, as opposed to mere emotional responses including anger, sadness, anxiety, and distress.)   For the reasons set forth above, summary judgment shall enter for Detectives Crockett and Sicilliano and Det. Lt. Bernard on this claim.

*False Arrest and False Imprisonment*

Williams's state law claims for false arrest and false imprisonment against Officers Czanowski, Wolski and Sgt. Bibeau in connection with January 2, 2010 arrest fail for the same reasons as stated above with respect to his corresponding Section 1983 claim, they had probable cause to arrest him for slashing Colangelo's tires.   Therefore, Officers Czanowski and Wolski are entitled to summary judgment on these claims. To the extent that Williams intends to bring claims against Dets. Crockett and Sicilliano and Det. Lt. Bernard for false arrest/false imprisonment, they are entitled to summary judgment as they arrested him based on a warrant issued by an independent clerk and, in any event, there was probable cause to believe that he had violated an abuse protection order and sent threatening communications to Colangelo.

"The tort of false imprisonment consists in the (1) intentional and (2) unlawful (3) confinement of a person, (4) directly or indirectly (5) of which the person confined is conscious or is harmed by such confinement." *Noel v. Town of Plymouth, Mass.*, 895 F. Supp.

346, 354 (D. Mass. 1995).   I will allow the false imprisonment claim against Officer

Gadarowski to go forward because taking the facts in a light most favorable to the Plaintiffs, a

reasonable jury could find that he intentionally restrained their freedom by pulling over

Williams's vehicle, *albeit* briefly, without reasonable suspicion, that is without legal

justification.

### Conclusion

It is hereby Ordered that:


1.   *Defendants, Officer John S. Czanowski, Officer Troy L. Valardi,Officer James F.*
*Trifiro, Officer Jesse Gadarowski, Officer Larry Landry, Detective William Crockett,*
*Detective Rocco Siciliano, (Former) Detective/Deputy Chief John Bernard And The City Of*
*Gardner's Partial Motion For Summary Judgment On The Plaintiff, Michael Williams'*
*Complaint (Leave To File Granted OnJune 2, 2015)*(Docket No. 63), is ***granted***, in part and
***denied,*** in part, as provided herein;

2.   *Defendant Guy Bibeau's Motion For Summary Judgment* (Docket No. 67) is
***granted***, in part and ***denied,*** in part, as provided herein; and

3.   *Defendant Officer Joseph W. Wolski's Motion For Summary Judgment On The*
*Williams Plaintiffs' Complaint* (Docket No. 71) is ***granted***, in part and ***denied,*** in part, as
provided herein.


*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**
